# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT WALSH,**

               *Plaintiff,*

   **v.**

**NORTHAMPTON COMMUNITY COLLEGE, KAREN ANGENY (in her capacity as Interim Title IX Coordinator), LESLIE GATES (individually and in his capacity as Instructor for Northampton Community College), and DOES 1-20, inclusive,**

               *Defendants.*

**CASE NO.**

3:22-CV-1163

**COMPLAINT**

(1) Title IX Violation
(2) ADA Violation
(3) Section 504 Violation
(4) Negligent Infliction of Emotional Distress
(5) Infliction of Emotional Distress
(6) Breach of Contract

**JURY TRIAL DEMAND**

FILED
SCRANTON

JUL 27 2022

PER _____ DEPUTY CLERK

---

## COMPLAINT

NOW COMES Plaintiff ROBERT WALSH ("Plaintiff"), appearing *Pro Se*, with his Complaint and Demand for Jury Trial against Defendants, Northampton Community College, Karen Angeny, and Leslie Gates ("Defendants"), hereby states the following:

## I.   INTRODUCTION

1

This is an action arising from Plaintiff's attendance at Northampton Community College where he experienced sexual harassment and discrimination. Plaintiff is seeking damages for Defendants' violation of the Fourteenth Amendment, Title IX of the Education Act Amendments Of 1972, Americans with Disabilities Act, 504 of the Rehabilitation Act of 1973, 29 U.S.C. §791, *et seq*. Defendants are also responsible for negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of contract.

## II.    PARTIES

2.    Plaintiff Robert Walsh ("Plaintiff") is a former student of Defendant Northampton Community College.

3.    Defendant Northampton Community College ("NCC") is a public community college located at several campuses in and around the State of Pennsylvania.  As a public institution, NCC receives federal funding.

4.    Defendant Karen Angeny ("Angeny") was employed by NCC as the Acting Lead Title IX Coordinator.

5.    Defendant Leslie Gates ("Gates") was employed by NCC as an instructor.

2

6.     Defendant's Does 1-20 ("Doe Defendants") are employees or agents of Defendant NCC, acting within the scope of their employment, that caused the harms to Plaintiff subject of this lawsuit. At this time, their names and whereabouts are unknown.

## III.   JURISDICTION & VENUE

7.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

8.     In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Breach of Contract.

9.     Defendant conducts business within the State of Pennsylvania.

10.    Defendants Angeny and Gates and the Doe Defendants on the grounds that they were employees of NCC at all relevant times herein

and personally violated certain rights and policies, the effects of which were felt in the State of Pennsylvania.

11.    Venue in this action is properly in the Middle District Court of Pennsylvania because the events relevant to this action occurred primarily within the geographical confines of the Middle District of Pennsylvania.

## IV.    FACTUAL ALLEGATIONS

12.    Plaintiff is an individual suffering from various disabilities while enrolled at NCC.

13.    On February 4, 2020, Plaintiff was diagnosed with chronic Post-Traumatic Stress Disorder ("PTSD"), panic disorder with agoraphobia, and an episode of recurrent major depressive disorder.

14.    PTSD leads to flashbacks, nightmares, and severe anxiety, as well as uncontrollable thoughts. This makes the performance of daily tasks such as sleeping and working difficult.

15.    On June 9, 2021, Plaintiff's treatment plan for his generalized anxiety disorder was added to Defendants' file.

16.    Plaintiff urinates more frequently than others because of his anxiety.

4

17.   Plaintiff suffers from asthma, which affects his respiratory bodily functions.

18.   Sometime in the Fall of 2019, Plaintiff inquired about taking a "Class A Truck Driving Program" ("the program") offered by NCC.

19.   Plaintiff was intending to work a truck driver for at least the next 20 years following said program.

20.   Before Plaintiff decided to enroll in the offered truck driving program, NCC made available many published promotional and advertising materials promulgated by NCC concerning the specific program in which Plaintiff was interested, as well as general topics such as NCC policies and practices.

21.   Upon enrollment, Plaintiff was given NCC's Accessibility Policy, NCC's Discrimination, Harassment, and Sexual Misconduct Policy, and NCC's Statement of Discrimination.

22.   Plaintiff informed Defendants of his anxiety and social phobia during his interview for the program and Defendants agreed that because of his disabilities a career as a truck driver would be optimal.

23.   After reviewing the various published promotional and advertising materials promulgated by NCC, as well as the various phone

5

conversations and in-person meetings with NCC staff and based on what he had learned from the written materials and conversations, Plaintiff decided to enroll in the program.

24.    To accomplish his enrollment, Plaintiff traveled to the NCC administrative offices, signed various enrollment documents, arranged for payment of all sums required to enroll, and was informed by NCC staff that he was eligible to begin classes on April 20, 2020 at the Pocono training      site      of      NCC      at      2411      Rt.      715 Kapp, 100L Tannersville, PA 18372 ("Pocono Location").

25.    Shortly thereafter, and before his planned start date of April 20, 2020, Plaintiff received a phone call from NCC staffer Kimberly Berger informing him that NCC was additionally going to be offering the Class A Truck Driving Program at a Northampton County training site on the campus of Lehigh Cement Company at 401 W. Prospect Street Nazareth, PA 18064 ("Nazareth Location").

26.    Because Nazareth was a 15-mintue drive from his home as opposed to a 40-minute drive to Monroe, Plaintiff decided to begin the program at this new site.

6

27.    On February 25, 2020, Plaintiff attended a mandatory safety training at 3938 Easton Nazareth Hwy (Rt. 248), Nazareth, PA 18064.

28.    On March 2, 2020, Plaintiff began attending classroom instructions at the Nazareth Location.

29.    Plaintiff passed all written classroom exams and obtained the required permits from the Pennsylvania Department of Transportation ("PENNDOT").

30.    Plaintiff reiterated his anxiety to NCC staff during the classroom instructions.

31.    The classes were held in an improperly installed trailer, which forced students to hold on to their tables to avoid rolling away on their chairs.

32.    The bathroom pump made a loud noise whenever used that interrupted the class and increased Plaintiff's anxiety about using the bathroom.

33.    Students were told by Director Tina Frindt ("Frindt") to use the bathroom only when necessary because of water costs to NCC, further increasing Plaintiff's anxiety.

34.    Shortly after the two weeks of classroom instructions, NCC advised Plaintiff that all classes were canceled for an indefinite time, effective immediately due to COVID-19.

35.    On July 9, 2020, Frindt informed Plaintiff that classes would resume only at the Pocono Location and provided Plaintiff with the NCC's COVID-19 guidelines.

36.    Plaintiff was forced to take a transfer to a part-time evening class schedule because the Pocono Location was a 40-minute drive from Plaintiff's home.

37.    On July 24, 2020, Plaintiff started the driving portion of his classes with instructor, Defendant Gates.

38.    Defendant Gates exhibited numerous inappropriate behaviors:

   a) Unwelcome sexual or gender-based verbal, written, and physical conduct;

   b) Sexualized language and/or jokes, such as comparing the truck's driving stick to male genitalia;

   c) Comments or statements that were demeaning, humiliating, suggestive, insulting, vulgar, crude, and/or lewd;

8

    d) Often smoking cigarettes near Plaintiff and other students, as well as smoking in the cab of the trucks with Plaintiff and other students present while the windows were closed;

    e) Offering to smoke cigarettes with Plaintiff; and

    f) Making inferences that if Plaintiff did not condone his smoking, he would retaliate against Plaintiff by lowering his grade.

39.   When Plaintiff told Defendant Gates he did not smoke, Gates insulted Plaintiff and warned him not to report his smoking.

40.   Plaintiff was intimidated by Gates and feared retaliation from Gates by a reduction of his course grade.

41.   On August 7, 2020, Plaintiff obtained a letter from his physician stating that he could not be subjected to secondhand cigarette smoke and submitted a complaint to NCC.

42.   Defendants did not follow the national and NCC COVID-19 safeguards, such as:

    a) Defendants did not wear masks;

    b) Defendants did not require students to wear masks;

    c) Defendants did not require social distancing by staff or students;

d) Defendants did not do temperature checks or other health monitoring of staff and students;

e) Defendants did not provide hand sanitizer stations; and

f) Defendants did not sanitize tables, chairs, work areas, or the interior surfaces of the trucks.

43.    Defendants require Plaintiff to urinate outside in an area only partially hidden from public view and cameras.

44.    The area where Plaintiff was told to urinate was overcome with the stench of human urine.

45.    Plaintiff had to use the bathroom approximately every 45 minutes because of his anxiety disorder.

46.    During weekend classes, Plaintiff had to drive to a convenience store off campus to use the restroom every time he had to urinate on weekends causing tardiness to class.

47.    During the week classes, Plaintiff had to walk eight minutes every time he had to use the bathroom.

48.    Plaintiff was ridiculed by Defendants because he did not urinate outside and had frequent need to urinate.

49.    During the driving course, Defendant Gates told Plaintiff he had to urinate next to the truck or "be a pussy" and drive to a convenience store.

50.    At one point, Defendant Gates told Plaintiff that if he ever needed to defecate, he would also have to walk or drive to the one of the bathrooms located further away.

51.    Defendants' actions triggered Plaintiff's anxiety and PTSD.

52.    On August 4, 2020, Plaintiff informed Frindt and Vice President Lauren Loeffler of inappropriate bathroom conditions.

53.    At the end of July, Plaintiff voluntarily withdrew from NCC because of the impact on his mental, physical, and emotional health.

54.    On August 4, 2020, Plaintiff requested a Title IX investigation.

55.    On September 14, 2020, Defendant Angeny found that Defendant Gates had violated College Policy 2.05 Title IX of the Education Amendments Act of 1972 and Title VI of the Civil Rights Act of 1964 – Discrimination, Harassment, and Sexual Misconduct Policy.

56.    Plaintiff suffered damages by expending significant time and resources attempting to obtain an education at NCC.

11

57.    Plaintiff suffered financial mental and emotional distress at the hands of Defendants, which caused him to seek medical treatment.

### Respondent Superior and Agency

58.    Under federal and Pennsylvania law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

59.    At all times relevant to this action, Defendants Angeny and Gates and the Doe Defendants were employed by NCC, and all their acts and omissions relevant to this action were undertaken within the scope of their employment with NCC.

## V.    CAUSES OF ACTION

### COUNT ONE - TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972

60.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

61.    Title IX of the Education Act Amendments of 1972 prohibits discrimination based on sex in educational institutions receiving federal funding. Schools receiving federal funding are required to employ at least one Title IX coordinator.

62.   Section 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against on the basis of sex.  This creates a duty for institutions to have their Title IX coordinator promptly investigate allegations of sex-based discrimination and provide accommodations to students that have suffered sex-based discrimination.

63.   Defendant NCC is a recipient of federal financial assistance for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

64.   Defendant Angeny was employed by NCC as the Acting Lead Title IX Coordinator.

65.   The sexual harassment and discrimination suffered by Plaintiff was on the basis of him being a man, as being evidenced by comments directed at his genitals and general 'manhood.'

66.   NCC had "actual knowledge" of Gates' gender-based harassment and discrimination due to students' previous complaints and Plaintiff's Title IX complaint.

67.   NCC knew or should have known that Gates was repeatedly engaging in sexual harassment and discrimination toward Plaintiff and other students.

68.   Defendants violated their Title IX obligations and inflicted sex-based discrimination by sexually harassing Plaintiff.

69.   Defendants negligently hired and failed to supervise staff responsible for the adverse actions continuing against Plaintiff.

70.   Defendants did nothing to prevent Gates from repeatedly sexually harassing and discriminating against Plaintiff.

71.   Defendants were legally required under Title IX to conduct a full and thorough investigation into the sexual harassment and discrimination suffered by Plaintiff upon first learning of adverse treatment.

72.   Defendants' lack of due care in their Title IX investigation is evident from the following:

a) NCC's failure to interview staff and students regarding whether Gates had engaged in gender-based sexual harassment and discrimination related to incidents involving Plaintiff.

b) NCC's failure to interview staff and students regarding whether NCC administrators and staff had knowledge that Gates had previously engaged in gender-based sexual harassment and discriminatory acts prior to incidents involving Plaintiff.

c) NCC's failure to explore its own failures in the hiring and supervision of Gates.

73.    As a direct and proximate result of Defendants' violations:

a) Plaintiff was prevented from enjoying the full benefits of his education at NCC.

b) Plaintiff experienced profound disruptions to his emotional and physical wellbeing while enrolled at NCC.

c) The profound disruptions to Plaintiff's emotional and physical wellbeing while enrolled at NCC, exacerbating his post-traumatic stress disorder.

d) Plaintiff was forced to abandon his education and career goals due to NCC's actions and omissions, causing him loss of earnings, then, now, and into the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)     Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT TWO - AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C.§ 12101)

74.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

75.     Plaintiff therefore is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

76.    Plaintiff suffers from multiple disabilities because of being diagnosed with an anxiety disorder, PTSD, and asthma.

77.    Plaintiff's disabilities limit major aspects of his life, making many activities difficult for him, such as respiratory problems and a need to urinate frequently.

78.    Despite his disabilities, Plaintiff was able to succeed in NCC's classroom instructions and was on track to do the same in the hands-on part of the program.

79.    The ADA and its regulations require that alternative services, modifications, and accommodations be made to qualified individuals with a disability.

80.    Defendants were fully aware of Plaintiff's disability.

81.    Plaintiff told Defendants about his disabilities before deciding on committing to NCC and continued to verbalize his disabilities throughout his studies.

82.    Plaintiff was denied reasonable accommodations for his documented disability.

83.   Defendants could have made reasonable, nonburdensome accommodations of allowing the Plaintiff bathroom adequate, proper bathroom access and privileges.

84.   As a result of Defendants' denial of reasonable accommodations for Plaintiff, Defendants violated the ADA by discriminating against Plaintiff as follows:

     a. Failing to recognize Plaintiff's anxiety disorder, PTSD, and asthma and related disability.

     b. Failing to provide adequate bathroom facilities for use by Plaintiff and others at the Nazareth Location as well as the Monroe Location.

     c. Failing to provide a smoke-free environment for Plaintiff and other students.

     d. Denying Plaintiff the equal or same opportunity to receive an education as a student without a disability.

     e. Discriminating against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

85. Defendants' inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

86. As a direct and proximate result of Defendants' unlawful refusal to provide reasonable accommodations for Plaintiff's disability, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

> (a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT THREE - SECTION 504 OF THE REHABILITATION ACT OF 1973

87.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

88.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities from discriminating based on disability. Section 504 states, in relevant part:

> *No otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.* 29 U.S.C. § 794(a).

89. As a public school receiving federal funding, Defendant NCC is subject to Section 504 of the Rehabilitation Act of 1973.

90. Plaintiff was diagnosed with anxiety disorder, PTSD, and asthma.

91. Plaintiff's disabilities limit major aspects of his life, such as respiratory problems and a need to urinate frequently, making many activities difficult for him.

92. Despite his disabilities, Plaintiff was able to succeed in NCC's classroom instructions and was on track to do the same in the hands-on part of the program.

93. At all relevant times, Defendants were fully aware of Plaintiff's disability after being informed by Plaintiff himself.

94. Defendants denied Plaintiff's reasonable accommodations and thereby discriminated against Plaintiff on the basis of his disabilities through the following actions:

    a. Failing to provide adequate bathroom facilities.

    b. Failing to provide a smoke-free environment for Plaintiff.

95.    Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to use the services Defendant NCC provides.

96.    As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff was denied access to an education equal to that enjoyed by non-disabled students. Plaintiff has therefore sustained and continues to sustain injuries and damages due to Defendants' actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

        (a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT FOUR - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

97.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

98.    Defendants' actions caused Plaintiff emotional distress and worsened his PTSD, anxiety and asthma.

99.    Defendants should have known that their actions would injurious to Plaintiff.

100.   Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation and discrimination.

101.   Defendants' actions violated NCC's policies.

102. Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

      (a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

      (b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

      (c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

      (d)    Grant such other and further relief as justice requires.

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103.  Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

104.  Defendants' intentional actions caused Plaintiff emotional distress and worsened his PTSD, anxiety and asthma.

105.  Defendants knew that their actions would injurious to Plaintiff.

106.  Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation and discrimination.

107.  Defendants' actions violated NCC's policies.

108.  Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

> (a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages

in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT SIX - BREACH OF CONTRACT

109.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

110.   Plaintiff detrimentally relied on the promises made by NCC prior to his enrollment.

111.   Plaintiff entered a contract by which NCC admitted Plaintiff into an NCC program under specified terms.

112.   Plaintiff accepted NCC's offer and attended NCC according to the terms of the agreement between the parties.

113. There was a mutual exchange of consideration by which Plaintiff attended NCC that involved Plaintiff making payments and expenditures of time and NCC providing an education to Plaintiff free of any violations of Plaintiff's constitutional rights.

114. NCC's policies included terms concerning the duty of NCC to investigate and make available resources related to sexual harassment, sexual discrimination, and other safety and health-related policies.

115. As a condition of attending NCC, Plaintiff had a reasonable expectation that NCC would be bound by these policies and that NCC and their staff and agents would comply with them.

116. NCC specifically promulgated their binding policy regarding Title IX investigations in a document entitled "Discrimination, Harassment, and Sexual Misconduct Policy."

117. NCC violated the obligations set by them in their own "Discrimination, Harassment, and Sexual Misconduct Policy" by, amongst other things, allowing an environment where employees are able to sexually harass and discriminate against students, as well as creating an environment where Plaintiff did not feel safe to speak up for fear of retaliation.

118. As a result of NCC's breach of the contract, Plaintiff has suffered severe emotional harm which forced him to withdraw from NCC.

119. Plaintiff was forced to pay for education services elsewhere as well as paying for intensive therapy related to the harms caused by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

      (a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

      (b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 25, 2022                    Respectfully submitted,

Robert Walsh, *Pro Se Plaintiff*
P.O. Box 441
Holly Springs, GA 30142
610.849.6207