# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT WALSH,**

> *Plaintiff,*

v.

**NORTHAMPTON COMMUNITY COLLEGE, KAREN ANGENY (in her capacity as Interim Title IX Coordinator), LESLIE GATES (individually and in his capacity as Instructor for Northampton Community College), and DOES 1-20, inclusive,**

> *Defendants.*

**CASE NO.**

3:22-CV-1163

**COMPLAINT**
(1) Title IX Violation
(2) ADA Violation
(3) Section 504 Violation
(4) Negligent Infliction of Emotional Distress
(5) Infliction of Emotional Distress
(6) Breach of Contract

**JURY TRIAL DEMAND**

FILED
SCRANTON

JUL 27 2022

PER _____ DEPUTY CLERK

---

## COMPLAINT

NOW COMES Plaintiff ROBERT WALSH ("Plaintiff"), appearing *Pro Se*, with his Complaint and Demand for Jury Trial against Defendants, Northampton Community College, Karen Angeny, and Leslie Gates ("Defendants"), hereby states the following:

## I.    INTRODUCTION

1

This is an action arising from Plaintiff's attendance at Northampton Community College where he experienced sexual harassment and discrimination. Plaintiff is seeking damages for Defendants' violation of the Fourteenth Amendment, Title IX of the Education Act Amendments Of 1972, Americans with Disabilities Act, 504 of the Rehabilitation Act of 1973, 29 U.S.C. §791, *et seq*. Defendants are also responsible for negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of contract.

## II.   PARTIES

2.     Plaintiff Robert Walsh ("Plaintiff") is a former student of Defendant Northampton Community College.

3.     Defendant Northampton Community College ("NCC") is a public community college located at several campuses in and around the State of Pennsylvania.  As a public institution, NCC receives federal funding.

4.     Defendant Karen Angeny ("Angeny") was employed by NCC as the Acting Lead Title IX Coordinator.

5.     Defendant Leslie Gates ("Gates") was employed by NCC as an instructor.

2

6.     Defendant's Does 1-20 ("Doe Defendants") are employees or agents of Defendant NCC, acting within the scope of their employment, that caused the harms to Plaintiff subject of this lawsuit. At this time, their names and whereabouts are unknown.

## III.   JURISDICTION & VENUE

7.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

8.     In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Breach of Contract.

9.     Defendant conducts business within the State of Pennsylvania.

10.    Defendants Angeny and Gates and the Doe Defendants on the grounds that they were employees of NCC at all relevant times herein

and personally violated certain rights and policies, the effects of which were felt in the State of Pennsylvania.

11.    Venue in this action is properly in the Middle District Court of Pennsylvania because the events relevant to this action occurred primarily within the geographical confines of the Middle District of Pennsylvania.

## IV.   FACTUAL ALLEGATIONS

12.    Plaintiff is an individual suffering from various disabilities while enrolled at NCC.

13.    On February 4, 2020, Plaintiff was diagnosed with chronic Post-Traumatic Stress Disorder ("PTSD"), panic disorder with agoraphobia, and an episode of recurrent major depressive disorder.

14.    PTSD leads to flashbacks, nightmares, and severe anxiety, as well as uncontrollable thoughts. This makes the performance of daily tasks such as sleeping and working difficult.

15.    On June 9, 2021, Plaintiff's treatment plan for his generalized anxiety disorder was added to Defendants' file.

16.    Plaintiff urinates more frequently than others because of his anxiety.

4

17. Plaintiff suffers from asthma, which affects his respiratory bodily functions.

18. Sometime in the Fall of 2019, Plaintiff inquired about taking a "Class A Truck Driving Program" ("the program") offered by NCC.

19. Plaintiff was intending to work a truck driver for at least the next 20 years following said program.

20. Before Plaintiff decided to enroll in the offered truck driving program, NCC made available many published promotional and advertising materials promulgated by NCC concerning the specific program in which Plaintiff was interested, as well as general topics such as NCC policies and practices.

21. Upon enrollment, Plaintiff was given NCC's Accessibility Policy, NCC's Discrimination, Harassment, and Sexual Misconduct Policy, and NCC's Statement of Discrimination.

22. Plaintiff informed Defendants of his anxiety and social phobia during his interview for the program and Defendants agreed that because of his disabilities a career as a truck driver would be optimal.

23. After reviewing the various published promotional and advertising materials promulgated by NCC, as well as the various phone

conversations and in-person meetings with NCC staff and based on what he had learned from the written materials and conversations, Plaintiff decided to enroll in the program.

24.   To accomplish his enrollment, Plaintiff traveled to the NCC administrative offices, signed various enrollment documents, arranged for payment of all sums required to enroll, and was informed by NCC staff that he was eligible to begin classes on April 20, 2020 at the Pocono training site of NCC at 2411 Rt. 715 Kapp, 100L Tannersville, PA 18372 ("Pocono Location").

25.   Shortly thereafter, and before his planned start date of April 20, 2020, Plaintiff received a phone call from NCC staffer Kimberly Berger informing him that NCC was additionally going to be offering the Class A Truck Driving Program at a Northampton County training site on the campus of Lehigh Cement Company at 401 W. Prospect Street Nazareth, PA 18064 ("Nazareth Location").

26.   Because Nazareth was a 15-mintue drive from his home as opposed to a 40-minute drive to Monroe, Plaintiff decided to begin the program at this new site.

6

27.   On February 25, 2020, Plaintiff attended a mandatory safety training at 3938 Easton Nazareth Hwy (Rt. 248), Nazareth, PA 18064.

28.   On March 2, 2020, Plaintiff began attending classroom instructions at the Nazareth Location.

29.   Plaintiff passed all written classroom exams and obtained the required permits from the Pennsylvania Department of Transportation ("PENNDOT").

30.   Plaintiff reiterated his anxiety to NCC staff during the classroom instructions.

31.   The classes were held in an improperly installed trailer, which forced students to hold on to their tables to avoid rolling away on their chairs.

32.   The bathroom pump made a loud noise whenever used that interrupted the class and increased Plaintiff's anxiety about using the bathroom.

33.   Students were told by Director Tina Frindt ("Frindt") to use the bathroom only when necessary because of water costs to NCC, further increasing Plaintiff's anxiety.

34. Shortly after the two weeks of classroom instructions, NCC advised Plaintiff that all classes were canceled for an indefinite time, effective immediately due to COVID-19.

35. On July 9, 2020, Frindt informed Plaintiff that classes would resume only at the Pocono Location and provided Plaintiff with the NCC's COVID-19 guidelines.

36. Plaintiff was forced to take a transfer to a part-time evening class schedule because the Pocono Location was a 40-minute drive from Plaintiff's home.

37. On July 24, 2020, Plaintiff started the driving portion of his classes with instructor, Defendant Gates.

38. Defendant Gates exhibited numerous inappropriate behaviors:

   a) Unwelcome sexual or gender-based verbal, written, and physical conduct;

   b) Sexualized language and/or jokes, such as comparing the truck's driving stick to male genitalia;

   c) Comments or statements that were demeaning, humiliating, suggestive, insulting, vulgar, crude, and/or lewd;

d) Often smoking cigarettes near Plaintiff and other students, as well as smoking in the cab of the trucks with Plaintiff and other students present while the windows were closed;

e) Offering to smoke cigarettes with Plaintiff; and

f) Making inferences that if Plaintiff did not condone his smoking, he would retaliate against Plaintiff by lowering his grade.

39.    When Plaintiff told Defendant Gates he did not smoke, Gates insulted Plaintiff and warned him not to report his smoking.

40.    Plaintiff was intimidated by Gates and feared retaliation from Gates by a reduction of his course grade.

41.    On August 7, 2020, Plaintiff obtained a letter from his physician stating that he could not be subjected to secondhand cigarette smoke and submitted a complaint to NCC.

42.    Defendants did not follow the national and NCC COVID-19 safeguards, such as:

a) Defendants did not wear masks;

b) Defendants did not require students to wear masks;

c) Defendants did not require social distancing by staff or students;

9

d) Defendants did not do temperature checks or other health monitoring of staff and students;

e) Defendants did not provide hand sanitizer stations; and

f) Defendants did not sanitize tables, chairs, work areas, or the interior surfaces of the trucks.

43. Defendants require Plaintiff to urinate outside in an area only partially hidden from public view and cameras.

44. The area where Plaintiff was told to urinate was overcome with the stench of human urine.

45. Plaintiff had to use the bathroom approximately every 45 minutes because of his anxiety disorder.

46. During weekend classes, Plaintiff had to drive to a convenience store off campus to use the restroom every time he had to urinate on weekends causing tardiness to class.

47. During the week classes, Plaintiff had to walk eight minutes every time he had to use the bathroom.

48. Plaintiff was ridiculed by Defendants because he did not urinate outside and had frequent need to urinate.

49.   During the driving course, Defendant Gates told Plaintiff he had to urinate next to the truck or "be a pussy" and drive to a convenience store.

50.   At one point, Defendant Gates told Plaintiff that if he ever needed to defecate, he would also have to walk or drive to the one of the bathrooms located further away.

51.   Defendants' actions triggered Plaintiff's anxiety and PTSD.

52.   On August 4, 2020, Plaintiff informed Frindt and Vice President Lauren Loeffler of inappropriate bathroom conditions.

53.   At the end of July, Plaintiff voluntarily withdrew from NCC because of the impact on his mental, physical, and emotional health.

54.   On August 4, 2020, Plaintiff requested a Title IX investigation.

55.   On September 14, 2020, Defendant Angeny found that Defendant Gates had violated College Policy 2.05 Title IX of the Education Amendments Act of 1972 and Title VI of the Civil Rights Act of 1964 – Discrimination, Harassment, and Sexual Misconduct Policy.

56.   Plaintiff suffered damages by expending significant time and resources attempting to obtain an education at NCC.

57.  Plaintiff suffered financial mental and emotional distress at the hands of Defendants, which caused him to seek medical treatment.

## Respondent Superior and Agency

58.  Under federal and Pennsylvania law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

59.  At all times relevant to this action, Defendants Angeny and Gates and the Doe Defendants were employed by NCC, and all their acts and omissions relevant to this action were undertaken within the scope of their employment with NCC.

## V.  CAUSES OF ACTION

### COUNT ONE - TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972

60.  Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

61.  Title IX of the Education Act Amendments of 1972 prohibits discrimination based on sex in educational institutions receiving federal funding. Schools receiving federal funding are required to employ at least one Title IX coordinator.

62.    Section 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against on the basis of sex. This creates a duty for institutions to have their Title IX coordinator promptly investigate allegations of sex-based discrimination and provide accommodations to students that have suffered sex-based discrimination.

63.    Defendant NCC is a recipient of federal financial assistance for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

64.    Defendant Angeny was employed by NCC as the Acting Lead Title IX Coordinator.

65.    The sexual harassment and discrimination suffered by Plaintiff was on the basis of him being a man, as being evidenced by comments directed at his genitals and general 'manhood.'

66.    NCC had "actual knowledge" of Gates' gender-based harassment and discrimination due to students' previous complaints and Plaintiff's Title IX complaint.

13

67. NCC knew or should have known that Gates was repeatedly engaging in sexual harassment and discrimination toward Plaintiff and other students.

68. Defendants violated their Title IX obligations and inflicted sex-based discrimination by sexually harassing Plaintiff.

69. Defendants negligently hired and failed to supervise staff responsible for the adverse actions continuing against Plaintiff.

70. Defendants did nothing to prevent Gates from repeatedly sexually harassing and discriminating against Plaintiff.

71. Defendants were legally required under Title IX to conduct a full and thorough investigation into the sexual harassment and discrimination suffered by Plaintiff upon first learning of adverse treatment.

72. Defendants' lack of due care in their Title IX investigation is evident from the following:

a) NCC's failure to interview staff and students regarding whether Gates had engaged in gender-based sexual harassment and discrimination related to incidents involving Plaintiff.

b) NCC's failure to interview staff and students regarding whether NCC administrators and staff had knowledge that Gates had previously engaged in gender-based sexual harassment and discriminatory acts prior to incidents involving Plaintiff.

c) NCC's failure to explore its own failures in the hiring and supervision of Gates.

73. As a direct and proximate result of Defendants' violations:

a) Plaintiff was prevented from enjoying the full benefits of his education at NCC.

b) Plaintiff experienced profound disruptions to his emotional and physical wellbeing while enrolled at NCC.

c) The profound disruptions to Plaintiff's emotional and physical wellbeing while enrolled at NCC, exacerbating his post-traumatic stress disorder.

d) Plaintiff was forced to abandon his education and career goals due to NCC's actions and omissions, causing him loss of earnings, then, now, and into the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)     Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT TWO – AMERICANS WITH DISABILITIES ACT OF 1990
### (42 U.S.C.§ 12101)

74.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

75.     Plaintiff therefore is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

76.     Plaintiff suffers from multiple disabilities because of being diagnosed with an anxiety disorder, PTSD, and asthma.

77.     Plaintiff's disabilities limit major aspects of his life, making many activities difficult for him, such as respiratory problems and a need to urinate frequently.

78.     Despite his disabilities, Plaintiff was able to succeed in NCC's classroom instructions and was on track to do the same in the hands-on part of the program.

79.     The ADA and its regulations require that alternative services, modifications, and accommodations be made to qualified individuals with a disability.

80.     Defendants were fully aware of Plaintiff's disability.

81.     Plaintiff told Defendants about his disabilities before deciding on committing to NCC and continued to verbalize his disabilities throughout his studies.

82.     Plaintiff was denied reasonable accommodations for his documented disability.

83.   Defendants could have made reasonable, nonburdensome accommodations of allowing the Plaintiff bathroom adequate, proper bathroom access and privileges.

84.   As a result of Defendants' denial of reasonable accommodations for Plaintiff, Defendants violated the ADA by discriminating against Plaintiff as follows:

        a.   Failing to recognize Plaintiff's anxiety disorder, PTSD, and asthma and related disability.

        b.   Failing to provide adequate bathroom facilities for use by Plaintiff and others at the Nazareth Location as well as the Monroe Location.

        c.   Failing to provide a smoke-free environment for Plaintiff and other students.

        d.   Denying Plaintiff the equal or same opportunity to receive an education as a student without a disability.

        e.   Discriminating against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

85. Defendants' inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

86. As a direct and proximate result of Defendants' unlawful refusal to provide reasonable accommodations for Plaintiff's disability, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT THREE - SECTION 504 OF THE REHABILITATION ACT OF 1973

87.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

88.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities from discriminating based on disability. Section 504 states, in relevant part:

> *No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.* 29 U.S.C. § 794(a).

89.  As a public school receiving federal funding, Defendant NCC is subject to Section 504 of the Rehabilitation Act of 1973.

90.  Plaintiff was diagnosed with anxiety disorder, PTSD, and asthma.

91.  Plaintiff's disabilities limit major aspects of his life, such as respiratory problems and a need to urinate frequently, making many activities difficult for him.

92.  Despite his disabilities, Plaintiff was able to succeed in NCC's classroom instructions and was on track to do the same in the hands-on part of the program.

93.  At all relevant times, Defendants were fully aware of Plaintiff's disability after being informed by Plaintiff himself.

94.  Defendants denied Plaintiff's reasonable accommodations and thereby discriminated against Plaintiff on the basis of his disabilities through the following actions:

> a. Failing to provide adequate bathroom facilities.
>
> b. Failing to provide a smoke-free environment for Plaintiff.

95.   Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to use the services Defendant NCC provides.

96.   As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff was denied access to an education equal to that enjoyed by non-disabled students. Plaintiff has therefore sustained and continues to sustain injuries and damages due to Defendants' actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

> (a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT FOUR – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

97.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

98.    Defendants' actions caused Plaintiff emotional distress and worsened his PTSD, anxiety and asthma.

99.    Defendants should have known that their actions would injurious to Plaintiff.

100.    Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation and discrimination.

101.    Defendants' actions violated NCC's policies.

23

102. Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

24

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103.  Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

104.  Defendants' intentional actions caused Plaintiff emotional distress and worsened his PTSD, anxiety and asthma.

105.  Defendants knew that their actions would injurious to Plaintiff.

106.  Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation and discrimination.

107.  Defendants' actions violated NCC's policies.

108.  Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

> (a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages

in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT SIX - BREACH OF CONTRACT

109.  Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

110.  Plaintiff detrimentally relied on the promises made by NCC prior to his enrollment.

111.  Plaintiff entered a contract by which NCC admitted Plaintiff into an NCC program under specified terms.

112.  Plaintiff accepted NCC's offer and attended NCC according to the terms of the agreement between the parties.

113. There was a mutual exchange of consideration by which Plaintiff attended NCC that involved Plaintiff making payments and expenditures of time and NCC providing an education to Plaintiff free of any violations of Plaintiff's constitutional rights.

114. NCC's policies included terms concerning the duty of NCC to investigate and make available resources related to sexual harassment, sexual discrimination, and other safety and health-related policies.

115. As a condition of attending NCC, Plaintiff had a reasonable expectation that NCC would be bound by these policies and that NCC and their staff and agents would comply with them.

116. NCC specifically promulgated their binding policy regarding Title IX investigations in a document entitled "Discrimination, Harassment, and Sexual Misconduct Policy."

117. NCC violated the obligations set by them in their own "Discrimination, Harassment, and Sexual Misconduct Policy" by, amongst other things, allowing an environment where employees are able to sexually harass and discriminate against students, as well as creating an environment where Plaintiff did not feel safe to speak up for fear of retaliation.

118. As a result of NCC's breach of the contract, Plaintiff has suffered severe emotional harm which forced him to withdraw from NCC.

119. Plaintiff was forced to pay for education services elsewhere as well as paying for intensive therapy related to the harms caused by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

      (a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute;

      (b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 25, 2022                    Respectfully submitted,

Robert Walsh, *Pro Se Plaintiff*
P.O. Box 441
Holly Springs, GA 30142
610.849.6207

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robert Walsh

**DEFENDANTS**
Northampton Community Colllege, Karen Angeny, Leslie Gates, and DOES 1-20

**(b)** County of Residence of First Listed Plaintiff    Cherokee County, GA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert Walsh, Pro Se, P.O. Box 441,
Holly Springs, GA 30142, 610-849-6207

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.§ 12101, 29 U.S.C. § 794
Brief description of cause:
Title IX Violations, Violations of the Americans with Disabilities Act of 1990, and Violations of the Rehabilitation Act of 1973

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                         DOCKET NUMBER

DATE
Jul 26, 2022

SIGNATURE OF ATTORNEY OF RECORD
s/ Robert Walsh (pro se)

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

JS 44 Reverse (Rev. 04/21)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Generated: Jul 27, 2022 10:59AM



# U.S. District Court

## Pennsylvania Middle - Scranton

Receipt Date: Jul 27, 2022 10:59AM

HARRIS INVESTIGATIONS, LLC
PO BOX 304
LANSDALE, PA 19446

Rcpt. No: 333100234                      Trans. Date: Jul 27, 2022 10:59AM                      Cashier ID: #EP

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 200 | Civil Filing Fee- Non-Prisoner | DPAM322CV001163<br>**FBO**: ROBERT WALSH | 1 | 402.00 | 402.00 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #1669 | 07/27/2022 | $402.00 |

| | |
|--|--|
| Total Due: | $402.00 |
| Total Tendered: | $402.00 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.