## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT WALSH,

Case No. 3:22-cv-01163-JFS

*Plaintiff,*

v.

NORTHAMPTON COMMUNITY
COLLEGE, KAREN ANGENY (in her
capacity as Interim Title IX
Coordinator), LESLIE GATES
(individually and in his capacity as
Instructor for Northampton Community
College), and DOES 1-20, inclusive,

*Defendants.*

---

## AMENDED COMPLAINT AND JURY DEMAND

## I.      INTRODUCTION

This is an action arising from Plaintiff's attendance at Northampton Community College where he experienced sexual harassment and discrimination. Plaintiff is seeking damages for Defendants' violation of the Fourteenth Amendment, Title IX of the Education Act Amendments Of 1972, Americans with Disabilities Act, 504 of the Rehabilitation Act of 1973, 29 U.S.C. §791, *et seq.* Defendants are also responsible for negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of contract.

## II.  PARTIES

1.   Plaintiff Robert Walsh ("Plaintiff") is a former student of Defendant Northampton Community College.

2.   Defendant Northampton Community College ("NCC") is a public community college located at several campuses in and around the State of Pennsylvania. NCC has received federal funding at all times relevant to this litigation.

3.   Defendant Karen Angeny ("Angeny") was at all times relevant to this case employed by Defendant NCC as the Acting Lead Title IX Coordinator.

4.   Defendant Leslie Gates ("Gates") was at all times relevant to this case an employee or agent of Defendant NCC.

5.   Defendant's Does 1-20 ("Doe Defendants") are employees or agents of Defendant NCC, acting within the scope of their employment, which caused the harms to Plaintiff subject of this lawsuit. At this time, their names and whereabouts are unknown.

## III.  JURISDICTION & VENUE

6.   This action arises under the law of the United States. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

7.     In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

8.     Defendant NCC conducts business within the State of Pennsylvania.

9.     Defendants Angeny and Gates and the Doe Defendants on the grounds that they were employees of NCC at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Pennsylvania.

10.    Venue in this action is properly in the Middle District Court of Pennsylvania because the events relevant to this action occurred primarily within the geographical confines of the Middle District of Pennsylvania.

## IV. FACTUAL ALLEGATIONS

11.    Plaintiff is an individual suffering from various disabilities while enrolled at NCC.

12.    On February 4, 2020, Plaintiff was diagnosed with chronic Post-Traumatic Stress Disorder ("PTSD"), panic disorder with agoraphobia, and an episode of recurrent major depressive disorder.

13.    PTSD leads to flashbacks, nightmares, and severe anxiety, as well as uncontrollable thoughts. This makes the performance of daily tasks such as sleeping and working difficult.

14.     On June 9, 2021, Plaintiff's treatment plan for his generalized anxiety disorder was added to Plaintiff's student file with Defendant NCC.

15.     Plaintiff urinates more frequently than others because of his anxiety.

16.     Plaintiff suffers from asthma, which affects his respiratory bodily functions.

17.     Sometime in the Fall of 2019, Plaintiff inquired about taking a "Class A Truck Driving Program" ("the program") offered by NCC.

18.     Plaintiff was intending to work as truck driver for at least the next 20 years following said program.

19.     Before Plaintiff decided to enroll in the offered truck driving program, NCC made available many published promotional and advertising materials promulgated by NCC concerning the specific program in which Plaintiff was interested, as well as general topics such as NCC policies and practices.

20.     Plaintiff entered into a contract with NCC in which NCC provided educational classes to Plaintiff in exchange for paid tuition.

21.     The contract between NCC and Plaintiff created a property right in Plaintiff's education.

22.     Upon enrollment, Plaintiff was given NCC's Accessibility Policy, NCC's Discrimination, Harassment, and Sexual Misconduct Policy, and NCC's Statement of Discrimination.

23.   Plaintiff informed Defendants of his anxiety and social phobia during his interview for the program and Defendants agreed that because of his disabilities a career as a truck driver would be optimal.

24.   After reviewing the various published promotional and advertising materials promulgated by NCC, as well as the various phone conversations and in-person meetings with NCC staff and based on what he had learned from the written materials and conversations, Plaintiff decided to enroll in the program.

25.   To accomplish his enrollment, Plaintiff traveled to the NCC administrative offices, signed various documents, arranged for payment of all sums required to enroll, and was informed by NCC staff that he was eligible to begin classes on April 20, 2020 at the Pocono training site of NCC at 2411 Kapp, 100L Tannersville, PA 18372 ("Pocono Location").

26.   Shortly thereafter, and before his planned start date of April 20, 2020 Plaintiff received a phone call from NCC staffer Kimberly Berger informing him that NCC was additionally going to be offering the Class A Truck Driving Program at a Northampton County training site on the campus of Lehigh Cement Company at 401 W. Prospect Street Nazareth, PA 18064 ("Nazareth Location").

27.    Because Nazareth was a 15-mintue drive from his home as opposed to a 40-minute drive to Monroe, Plaintiff decided to begin the program at this new site.

28.    On February 25, 2020, Plaintiff attended a mandatory safety training at 3938 Easton Nazareth Hwy (Rt. 248), Nazareth, PA 18064.

29.    On March 2, 2020, Plaintiff began attending classroom instructions at the Nazareth Location.

30.    Plaintiff passed all written classroom exams and obtained the required permits from the Pennsylvania Department of Transportation ("PENNDOT").

31.    Plaintiff reiterated his anxiety to NCC staff during the classroom instructions.

32.    The classes were held in an improperly installed trailer, which forced students to hold on to their tables to avoid rolling away on their chairs.

33.    The bathroom pump made a loud noise whenever used that interrupted the class and increased Plaintiff's anxiety about using the bathroom.

34.    Director Tina Frindt ("Frindt") told students to use the bathroom only, when necessary, because of water costs to NCC, further increasing Plaintiff's anxiety.

35.    Shortly after the two weeks of classroom instructions, NCC advised Plaintiff that all classes were canceled for an indefinite time, effective immediately due to COVID-19.

36.    On July 9, 2020, Frindt informed Plaintiff that classes would resume only at the Pocono Location and provided Plaintiff with the NCC's COVID-19 guidelines.

37.    Plaintiff was forced to take a transfer to a part-time evening class schedule because the Pocono Location was a 40-minute drive from Plaintiff's home.

38.    On July 24, 2020, Plaintiff started the driving portion of his classes with instructor, Defendant Gates.

39.    Defendant Gates exhibited numerous inappropriate behaviors throughout the teaching of the course:

    a.    Unwelcome sexual or gender-based verbal, written, and physical conduct;

    b.    Sexualized language and/or jokes, such as comparing the truck's driving stick to male genitalia;

    c.    Comments or statements that were demeaning, humiliating, suggestive, insulting, vulgar, crude, and/or lewd;

    d.    Often smoking cigarettes near Plaintiff and other students, as well as smoking in the cab of the trucks with Plaintiff and other students present while the windows were closed;

    e.    Offering to smoke cigarettes with Plaintiff; and

f.    Making inferences that if Plaintiff did not condone his smoking, he would retaliate against Plaintiff by lowering his grade.

39.   When Plaintiff told Defendant Gates he did not smoke, Gates knowingly insulted Plaintiff and warned him not to report his smoking.

40.   Plaintiff was intimidated by Gates and feared retaliation from Gates by a reduction of his course grade.

41.   On August 7, 2020, Plaintiff obtained a letter from his physician stating that he could not be subjected to secondhand cigarette smoke

42.   In August 2020, Plaintiff submitted a complaint to NCC.

43.   Defendant NCC was put on notice of the actions of Defendant Gates.

44.   Defendant NCC had actual knowledge of the wrongdoing and was deliberately indifferent of the actions taken by Defendant Gates.

43.   Defendants required Plaintiff to urinate outside in an area only partially hidden from public view and cameras.

44.   The area where Plaintiff was told to urinate was overcome with the stench of human urine.

45.   Plaintiff had to use the bathroom approximately every 45 minutes because of his anxiety disorder.

46. During weekend classes, Plaintiff had to drive to a convenience store off campus to use the restroom every time he had to urinate on weekends causing tardiness to class.

47. During the week classes, Plaintiff had to walk eight minutes every time he had to use the bathroom.

48. Defendants ridiculed plaintiff because he did not urinate outside and had frequent need to urinate.

49. During the driving course, Defendant Gates told Plaintiff he had to urinate next to the truck or "be a pussy" and drive to a convenience store.

50. At one point, Defendant Gates told Plaintiff that if he ever needed to defecate, he would also have to walk or drive to the one of the bathrooms located further away.

51. Defendants' actions triggered Plaintiff's anxiety and PTSD.

52. At the end of July 2020, Plaintiff voluntarily withdrew from NCC because of the impact on his mental, physical, and emotional health.

53. On August 4, 2020, Plaintiff requested a Title IX investigation.

54. On August 4, 2020, Plaintiff informed Frindt and Vice President Lauren Loeffler of inappropriate bathroom conditions.

55. On September 14, 2020, Defendant Angeny found that Defendant Gates had violated College Policy 2.05 Title IX of the Education Amendments Act of

1972 and Title VI of the Civil Rights Act of 1964 – Discrimination, Harassment, and Sexual Misconduct Policy.

56. Plaintiff suffered damages by expending significant time and resources attempting to obtain an education at NCC.

57. Plaintiff

58. Plaintiff suffered mental and emotional distress at the hands of Defendants intentional and extreme behavior, which caused him to seek medical treatment.

### Respondent Superior and Agency

59. Under federal and Pennsylvania law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

60. At all times relevant to this action, Defendants Angeny and Gates and the Doe Defendants were employed by NCC, and all their acts and omissions relevant to this action were undertaken within the scope of their employment with NCC.

## V.   CAUSES OF ACTION

## COUNT ONE - TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972

61.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

62.   Title IX of the Education Act Amendments of 1972 prohibits discrimination based on sex in educational institutions receiving federal funding. Schools receiving federal funding are required to employ at least one Title IX coordinator.

63.   Section 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against on the basis of sex. This creates a duty for institutions to have their Title IX coordinator promptly investigate allegations of sex-based discrimination and provide accommodations to students that have suffered sex-based discrimination.

64.   Defendant NCC is a recipient of federal financial assistance for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

65.   Defendant Angeny was employed by NCC as the Acting Lead Title IX Coordinator.

66.  The sexual harassment and discrimination suffered by Plaintiff was on the basis of him being a man, as being evidenced by comments directed at his genitals and general 'manhood.'

67.  NCC had "actual knowledge" of Gates' gender-based harassment and discrimination due to students' previous complaints and Plaintiff's Title IX complaint.

68.  NCC knew or should have known that Gates was repeatedly engaging in sexual harassment and discrimination toward Plaintiff and other students.

69.  Defendants violated their Title IX obligations and inflicted sex-based discrimination by sexually harassing Plaintiff.

70.  Defendants negligently hired and failed to supervise staff responsible for the adverse actions continuing against Plaintiff.

71.  Defendants did nothing to prevent Gates from repeatedly sexually harassing and discriminating against Plaintiff.

72.  Defendants were legally required under Title IX to conduct a full and thorough investigation into the sexual harassment and discrimination suffered by Plaintiff upon first learning of adverse treatment.

73.  Defendants' lack of due care in their Title IX investigation is evident from the following:

a.   NCC's failure to interview staff and students regarding whether Gates had engaged in gender-based sexual harassment and discrimination related to incidents involving Plaintiff.

b.   NCC's failure to interview staff and students regarding whether NCC administrators and staff had knowledge that Gates had previously engaged in gender-based sexual harassment and discriminatory acts prior to incidents involving Plaintiff.

c.   NCC's failure to explore its own failures in the hiring and supervision of Gates.

74.   As a direct and proximate result of Defendants' violations:

Plaintiff was prevented from enjoying the full benefits of his education at NCC.

Plaintiff experienced profound disruptions to his emotional and physical wellbeing while enrolled at NCC.

a.   The profound disruptions to Plaintiff's emotional and physical wellbeing while enrolled at NCC, exacerbating his posttraumatic stress disorder.

b.   Plaintiff was forced to abandon his education and career goals due to NCC's actions and omissions, causing him loss of earnings, then, now, and into the future.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this

Court:

    (a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute.

    (b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

    (c)    Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

    (d)    Grant such other and further relief as justice requires.

**COUNT TWO - AMERICANS WITH DISABILITIES ACT OF 1990
(42 U.S.C.§ 12101)**

75.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

76.    Plaintiff therefore is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

77.   Plaintiff suffers from multiple disabilities because of being diagnosed with an anxiety disorder, PTSD, and asthma.

78.   Plaintiff's disabilities limit major aspects of his life, making many activities difficult for him, such as respiratory problems and a need to urinate frequently.

79.   Despite his disabilities, Plaintiff was able to succeed in NCC's classroom instructions and was on track to do the same in the hands-on part of the program.

80.   The ADA and its regulations require that alternative services, modifications, and accommodations be made to qualified individuals with a disability.

81.   Defendants were fully aware of Plaintiff's disability.

82.   Plaintiff told Defendants about his disabilities before deciding on committing to NCC and continued to verbalize his disabilities throughout his studies.

83.   Plaintiff was denied reasonable accommodations for his documented disability and continued to suffer adverse consequences.

84.   Defendants could have made reasonable, nonburdensome accommodations of allowing the Plaintiff bathroom adequate, proper bathroom access and privileges.

85.   As a result of Defendants' denial of reasonable accommodations for Plaintiff, Defendants violated the ADA by discriminating against Plaintiff as follows:

a.  Failing to recognize Plaintiff's anxiety disorder, PTSD, and asthma and related disability.

b.  Failing to provide adequate bathroom facilities for use by Plaintiff and others at the Nazareth Location as well as the Monroe Location.

c.  Failing to provide a smoke-free environment for Plaintiff and other students.

d.  Denying Plaintiff, the equal or same opportunity to receive an education as a student without a disability.

e.  Discriminating against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

86.  Defendants' inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

87.  As a direct and proximate result of Defendants' unlawful refusal to provide reasonable accommodations for Plaintiff's disability, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute.

(b)    Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

(c)    Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT THREE - SECTION 504 OF THE REHABILITATION ACT OF 1973

88.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

89.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities from discriminating based on disability. Section 504 states, in relevant part:

> *No otherwise qualified individual with a disability in the United States …*
> *shall, solely by reason of his or her disability, be excluded from the*
> *participation in, be denied the benefits of, or be subjected to discrimination*
> *under any program or activity receiving Federal financial assistance or*
> *under any program or activity conducted by any Executive agency or by*
> *the United States Postal Service.* 29 U.S.C. § 794(a).

90.  As a public school receiving federal funding, Defendant NCC is subject to
Section 504 of the Rehabilitation Act of 1973.

91.  Plaintiff was diagnosed with anxiety disorder, PTSD, and asthma.

92.  Plaintiff's disabilities limit major aspects of his life, such as respiratory
problems and a need to urinate frequently, making many activities difficult
for him.

93.  Despite his disabilities, Plaintiff was able to succeed in NCC's classroom
instructions and was on track to do the same in the hands-on part of the
program.

94.  At all relevant times, Defendants were fully aware of Plaintiff's disability
after being informed by Plaintiff himself.

95.  Defendants denied Plaintiff's reasonable accommodations and thereby
discriminated against Plaintiff on the basis of his disabilities through the
following actions:

a.    Failing to provide adequate bathroom facilities.

b.    Failing to provide a smoke-free environment for Plaintiff.

96.   Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to use the services Defendant NCC provides.

97.   As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff was denied access to an education equal to that enjoyed by nondisabled students. Plaintiff has therefore sustained and continues to sustain injuries and damages due to Defendants' actions.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute.

(b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

(c)   Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT FOUR - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

98.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

99.    Defendants' actions were extreme and in blatant disregard for Plaintiff.

100.   Defendants' actions were reckless and mean to case harm to Plaintiff.

101.   Defendants' actions caused Plaintiff emotional distress and worsened his PTSD, anxiety, and asthma.

102.   Defendants should have known that their actions would injurious to Plaintiff.

103.   Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation, and discrimination.

104.   Defendants' actions violated NCC's policies.

105.   Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive

20

damages in amounts to be determined at trial and as are allowed under the statute.

(b)     Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

(c)     Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

106.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

107.   Defendants' actions were extreme and in blatant disregard for Plaintiff.

108.   Defendants' actions were intentional and mean to case harm to Plaintiff.

109.   Defendants' intentional actions caused Plaintiff emotional distress and worsened his PTSD, anxiety and asthma.

110.   Defendants knew that their actions would be injurious to Plaintiff.

111.   Defendants' actions rose to the level of sexual harassment, hostile environment, retaliation, and discrimination.

112.   Defendants' actions violated NCC's policies.

113.   Defendants' actions proximately caused Plaintiff emotional and physical injuries, increasing Plaintiff's anxiety and PTSD.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute.

(b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

(c)   Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## COUNT SIX - BREACH OF CONTRACT

114.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

115. Plaintiff detrimentally relied on the promises made by NCC prior to his enrollment.

116. Plaintiff entered a contract by which NCC admitted Plaintiff into an NCC program under specified terms.

117. Plaintiff accepted NCC's offer and attended NCC according to the terms of the agreement between the parties.

118. There was a mutual exchange of consideration by which Plaintiff attended NCC that involved Plaintiff making payments and expenditures of time and NCC providing an education to Plaintiff free of any violations of Plaintiff's constitutional rights. As set out above, Plaintiff signed various documents under the belief that he was legally contracting with NCC for his education.

119. Plaintiff arranged for payment of all sums required and set out in what Plaintiff believes to have been a contract to enroll and was informed by NCC staff that he was eligible to begin classes on April 20, 2020. Defendant NCC's policies and the written documents signed by Plaintiff followed the elements of contract law.

   a. There was a contract between Defendant NCC, its staff and the Plaintiff whether it be express, implied or both.

   b. The contract Defendant NCC entered a contract with Plaintiff which through its own policies, Defendant NCC promised to provide Plaintiff a

safe environment for instruction and training for all students in which to obtain their CDL truck driving license. Defendant NCC owed Plaintiff a duty to protect him and comply with federal and state law including Title IX.

c. Plaintiff was harmed by the actions of Defendants Gates and Does, as determined by the findings of Defendant Angeny on September 14, 2020, Defendant Angeny found that Defendant Gates had violated College Policy 2.05 Title IX of the Education Amendments Act of 1972 and Title VI of the Civil Rights Act of 1964 – Discrimination, Harassment, and Sexual Misconduct Policy.

120. As a result of the ongoing Discrimination, Harassment and Sexual Misconduct of Defendant Gates, and Defendants Doe, Plaintiff's PTSD episodes escalated causing extreme emotional distress.

121. The failure of Defendant NCC to provide appropriate, private, and safe restroom facilities for students was a clear breach of the contract, which caused Plaintiff severe emotional distress. Plaintiff was harassed and humiliated by Defendant Gates and Does when he was forced to relieve himself in front of them.

122. Defendant NCC owed a duty to Plaintiff, a person with a documented disability, to protect him from the physical and emotional abuse by Gates and

others, in accordance with State and Federal law, as well as NCC's own policies.

123. Defendant NCC's policies included terms concerning the duty of NCC to investigate and make available resources related to sexual harassment, sexual discrimination, and other safety and health-related policies.

124. As a condition of attending NCC, Plaintiff had a reasonable expectation that NCC would be bound by these policies and that NCC and their staff and agents would comply with them.

125. NCC specifically promulgated their binding policy regarding Title IX investigations in a document entitled "Discrimination, Harassment, and Sexual Misconduct Policy."

126. NCC violated the obligations set by them in their own "Discrimination, Harassment, and Sexual Misconduct Policy" by, amongst other things, allowing an environment where employees can sexually harass and discriminate against students, as well as creating an environment where Plaintiff did not feel safe to speak up for fear of retaliation.

127. As a result of NCC's breach of the contract, Plaintiff has suffered severe emotional harm which forced him to withdraw from NCC.

128. Plaintiff was forced to pay for education services elsewhere as well as paying for intensive therapy related to the harms caused by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)  Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress as well as reimbursement of all tuition and fees paid to Northampton Community College, and punitive damages in amounts to be determined at trial and as are allowed under the statute.

(b)  Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions.

(c)  Enter judgment against Defendants and in favor of Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: November 1, 2022                    Respectfully Submitted,

Keith Altman, Esq. (*pro hac vice*)
LAW OFFICE OF KEITH ALTMAN

33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

Conrad Benedetto, Bar ID 34666
BENEDETTO LEGAL ASSOCIATES
1615 South Broad Street
Philadelphia, Pennsylvania 19148
Telephone: (215) 389-1900
benedettolegalassociates@gmail.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT WALSH,

               *Plaintiff,*

v.

NORTHAMPTON COMMUNITY
COLLEGE, KAREN ANGENY (in her
capacity as Interim Title IX
Coordinator), LESLIE GATES
(individually and in his capacity as
Instructor for Northampton Community
College), and DOES 1-20, inclusive,

               *Defendants.*

Case No. 3:22-cv-01163-JFS

---

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure and has been served electronically upon the following on this the 1st day of November 2022.

John E. Freund, III, Esq., Attorney ID # 25390
Jody A. Mooney, Esq., Attorney ID# 325722
KING, SPRY, HERMAN, FREUND, & FAUL, LLC
One West Broad Street, Suite 700
Bethlehem, Pennsylvania 18018
jef@kingspry.com

*Attorneys for Defendants*

*/s/ Keith Altman*
Keith Altman, Esq.